UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARRELL PARKS, | : | CIVIL NO: 1:14-CV-01268 |
| | : | |
| Petitioner | : | |
| | : | (Judge Rambo) |
| v. | : | |
| | : | (Magistrate Judge Schwab) |
| M. O'SHAUGHNESSY, | : | |
| | : | |
| Respondent | : | |
| | : | |

## REPORT AND RECOMMENDATION

### I. Introduction.

The petitioner, Darrell Parks, claims that he was denied due process in connection with a prison disciplinary proceeding.  Because Parks was provide with all the process he was due, it is recommended that the Court deny Parks's petition for a writ of habeas corpus.

### II. Background and Procedural History.

Parks, a District of Columbia prisoner in federal custody and proceeding *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Although Parks is now incarcerated at the United States Penitentiary in Beaumont, Texas, the petition concerns a disciplinary action taken against Parks while he was incarcerated at the United States Penitentiary in Lewisburg, Pennsylvania.

On September 3, 2013, Officer O'Shaughnessy issued an incident report charging Parks with engaging in sexual acts. *Doc. 5-1* at 9.  In the incident report, O'Shaughnessy, who at the time was conducting rounds in D-Block, reported that, while speaking to an inmate on the opposite side the range from Cell 324, she turned toward that cell and saw Parks standing on the toilet in the cell looking out the cell. *Id*.  According to O'Shaughnessy, Parks's penis was erect under his pants and he was stroking his penis from above his pants; he was moving his hand in a back-and-forth motion over his pants touching his erect penis. *Id*.   When Parks notice O'Shaughnessy looking at him, he got down from the toilet. *Id*. O'Shaughnessy then walked off the range. *Id*.  Parks received a copy of the incident report on September 3, 2013.  *Id*.

Lieutenant Ferguson, who investigated the incident report, noted that he advised Parks of his rights, that Parks acknowledged that he understood his rights, that Parks displayed a poor attitude during the investigation, and that Parks declined to make a statement. *Id*. at 11.  Ferguson also noted that Parks did not request any witnesses. *Id*.  Ferguson referred the incident report to the Unit Discipline Committee (UDC), and Parks told the UDC that he was just standing on the toilet talking into the vent. *Id*. at 10.  The UDC referred the incident report to the Discipline Hearing Officer (DHO). *Id.*

On September 4, 2013, according to a form completed by Officer Marr, Marr informed Parks of his rights before the DHO. *Id.* at 13.  Parks refused to sign that form. *Id.*  Officer Marr also completed a form indicating that Parks requested a staff representative—Lieutenant Johnson—at the DHO hearing and that Parks wished to call Inmate Stewart as a witness. *Id.* at 12.  Parks refused to sign that form as well. *Id.*

Lieutenant Johnson was appointed as Parks's staff representative for the DHO hearing. *Id.* at 14.  The DHO held a hearing on September 17, 2013. *Id.* at 15.  The DHO noted on the Discipline Hearing Officer Report dated September 30, 2013, that Parks was given advance written notice of the charges and was advised of his rights. *Id.* at 15 and 18.  The DHO also noted that Lieutenant Johnson appeared as Parks's staff representative and that Johnson stated that he had reviewed the range video as requested by Parks. *Id*. at 15.  Lieutenant Johnson accompanied the DHO to the cell where the incident occurred. *Id*.

The DHO noted that Parks acknowledged that he understood his rights and was ready to proceed. *Id.*  Parks testified that the incident report was not accurate and that he did not do what was charged. *Id*.  Parks further testified that he has been real careful and that he puts his hands up when females are on the range. *Id*. He also pointed out that O'Shaughnessy did not say that he had his penis out, that

there is no way she could have seen him, and that he did not know she was there. *Id*.

The DHO noted that although Parks had requested that Inmate Stewart be called as a witness, Stewart was not called to present testimony in person because of security concerns given that, at the time of the hearing, Stewart was confined in a special management unit separate from Parks. *Id*. at 16.  But a written statement was obtained from Stewart, read to Parks, and entered into evidence. *Id*.  Stewart stated: "He was standing on the toilet talking through the vent to the guy in the next cell.  I don't believe he was doing that.  I didn't see it." *Id*. at 16 & 19.

Relying on the incident report and video footage, which, according to the DHO did not show what occurred in the cell but corroborated what O'Shaughnessy said in the incident report regarding her actions, the DHO found Parks guilty. *Id*. at 16-18.  The DHO found O'Shaughnessy's statements more credible than Parks's denials. *Id*. at 17.  The DHO also reasoned that Parks's contention that his penis was not exposed was an inadvertent admission of committing a prohibited act, and it was not required that his penis be exposed to qualify as engaging in a sexual act. *Id*.  The DHO noted that he went to the cell in question and determined that it was possible that O'Shaughnessy observed Parks. *Id*.  The DHO also considered that Parks had a history of engaging in sexual acts using female staff members as visual stimulation.  The DHO drew an adverse inference against Parks based on this

4

history, but he noted that Parks's history was not the only evidence that Parks committed the misconduct charged. *Id*. at 17-18.  The DHO also stated that he gave greater weight to O'Shaughnessy's claim that she observed Parks engaging in the misconduct than to Inmate Stewart's statement that he did not see Parks engaging in the misconduct. *Id*.  The DHO found that the greater weight of the evidence supports the finding that Parks violated the inmate discipline policy by engaging in a sexual act. *Id*. at 18. The DHO sanctioned Parks with loss of 27 days of statutory good time, 30 days of disciplinary segregation, and loss of commissary, telephone, and visiting privileges for 90 days. *Id.*  He explained that a prisoner engaging in sexual acts in front of prison staff undermines staff authority and ultimately jeopardizes the security of the institution. *Id*.  And, the DHO observed, the sanctions imposed were meant to punish Parks's for his misconduct and to deter future misconduct. *Id*.

Parks filed the petition for a writ of habeas corpus in this case on July 1, 2014 claiming that his due process rights were violated during the disciplinary process.  More specifically, he claims that the DHO used the wrong standard for making his factual findings.  Parks also contends that he is actually innocent of the misconduct, that the misconduct report was false and exaggerated, that there is no definition of a sexual act in the BOP's policy statements, that the DHO was biased, and that the investigating lieutenant did not thoroughly investigate the charge and

did not look into whether O'Shaughnessy had a history of issuing exaggerated, false, or misleading reports.  The respondent filed a response to the petition, and Parks filed a reply.  Because Parks was provided with due process in connection with the disciplinary hearing and because there was some evidence supporting the DHO's decision, the petition for a writ of habeas corpus should be denied.

## III.  Discussion.

Parks claims that he is actually innocent of engaging in a sexual act.  In the criminal, post-conviction context, it is an open question whether a cognizable freestanding claim of actual innocence exists. *See Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 71-72 (2009) ("As a fallback, Osborne also obliquely relies on an asserted federal constitutional right to be released upon proof of "actual innocence.  Whether such a federal right exists is an open question.  We have struggled with it over the years, in some cases assuming, *arguendo,* that it exists while also noting the difficult questions such a right would pose and the high standard any claimant would have to meet.").[1]  Parks has not presented any case, and the undersigned is not aware of any case, holding that a freestanding claim of

---

[1] In contrast to a freestanding claim, actual innocence is often used as a gateway to excuse a procedural default. *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013).  That is not how Parks is attempting to use actual innocence here.  Rather, he appears to be attempting to assert a freestanding claim of actual innocence.

actual innocence is cognizable in the disciplinary process context.  Rather, it is well established that in the prison disciplinary context, the pertinent question is whether the prisoner was provided due process in connection with the disciplinary process.  That is the question addressed here as well.

The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."  A due process claim requires a two-part analysis.  First, the court must determine whether the interest asserted by the petitioner is within the scope of protection of life, liberty, or property found in the Due Process Clause.  *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000).  Second, if the interest is one that is protected by the Due Process Clause, "the question then becomes what process is due to protect it." *Id.*

Federal prisoners have a liberty interest in statutory good time credits. *Denny v. Schultz,* 708 F.3d 140, 143 (3d Cir. 2013).  Thus, where a disciplinary proceeding may result in the loss of good time credits, a prisoner is entitled to certain procedural protections. *Campbell v. Holt,* 432 F. App'x. 49, 51 (3d Cir. 2011).  While "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply," when a liberty interest is at stake in a prison disciplinary proceeding, a prisoner is entitled to the following procedural protections: (1) at least 24 hours advance written notice of the disciplinary charges; (2) an

opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence; (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action; (4) where a prisoner is illiterate or where the complexity of the issues make it unlikely that the prisoner will be able to collect and present necessary evidence, the assistance of a fellow prisoner or a staff member; and (5) an impartial disciplinary tribunal. *Wolff v. McDonnell*, 418 U.S. 539, 556, 564-70 (1974); *Meyers v. Alldredge,* 492 F.2d 296, 305–07 (3d Cir. 1974).  Further, due process requires that there be some evidence to support the findings of the disciplinary hearing officer. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).

The Bureau of Prisons has enacted regulations setting forth procedures for disciplinary proceedings. 28 C.F.R. § 541.1, *et seq.*  Under these procedures, the disciplinary process starts with a staff member issuing an incident report charging a prisoner with committing a prohibited act. 28 C.F.R. § 541.5(a).  A staff member then investigates the incident report, *id.* at § 541.5(b), and after the investigation, the UDC reviews the incident report and makes one of the following decisions: (1) that the prisoner committed the prohibited act charged and/or a similar prohibited act as reflected in the incident report; (2) that the prisoner did not commit the prohibited act charged; or (3) that the incident report will be referred to the DHO for further review. *Id.* at § 541.7(a).  Prohibited acts are separated into

four categories based on severity: Greatest, High, Moderate, and Low. *Id.* at

§ 541.3(a).  If a prisoner is charged with a prohibited act in the Greatest or High

categories, the UDC automatically refers the incident report to the DHO for further

review. *Id.* at § 541.7(a)(4).  Under the regulations, when the UDC refers an

incident report to the DHO, it advises the prisoner of his rights at the upcoming

hearing before the DHO. *Id.* at § 541.7(g).

The hearing before the DHO is conducted in accordance with the procedures

set forth at 28 C.F.R. § 541.8.  Under that regulation, the prisoner is entitled to

notice of the charges at least 24 hours before the hearing, *id.* at § 541.8(c), the

prisoner is entitled to appear at the hearing, *id.* at § 541.8(e), and the prisoner is

entitled to staff representation at the hearing, *id.* at § 541.8(d).  The prisoner is also

entitled to make a statement and to present documentary evidence. *Id.* at § 541.8(f).

And the prisoner may request to have witnesses appear at the hearing on his behalf,

but the DHO may refuse to call the witnesses if they are not reasonably available,

their presence would jeopardize institutional security, or they would present

repetitive evidence. *Id.*

The regulations also set forth procedural standards governing the DHO's

decision-making.  The DHO must consider all evidence presented at the hearing.

*Id.*  The decision of the DHO must "be based on at least some facts, and if there is

conflicting evidence, on the greater weight of the evidence." *Id.*  Following the

hearing, the DHO must provide a written report documenting that the prisoner was advised of his rights. § 541.8(h).  The report must also document the evidence relied upon by the DHO, the findings of the DHO, the sanctions imposed by the DHO, and the reasons of the DHO for imposing those sanctions. *Id.*

The record establishes that Parks was provided with due process.  He was given more than 24-hours advance written notice of the disciplinary charge.  He had the assistance of a staff representative.  The DHO issued a written report setting forth the evidence relied on and the reasons for the disciplinary action.  While the DHO did not call Parks's inmate witness in person because of security concerns, he did consider the written statement of that witness.

Parks contends that Lieutenant Ferguson failed to thoroughly investigate the incident and failed to look into whether O'Shaughnessy had a history of issuing exaggerated, false, or misleading reports.  But a thorough investigation is not a requirement of due process in the prison disciplinary setting. *Moles v. Holt*, 221 F. App'x 92, 96 (3d Cir. 2007) ("We note that a failure to conduct a prompt and thorough investigation prior to a disciplinary hearing does not rise to the level of a due process violation.").  Further, while an inmate has a right to present relevant and available evidence at the disciplinary hearing, *Burns v. Pa. Dept. of Corr.,* 642 F.3d 163, 174 n. 11 (3d Cir. 2011), "in the absence of a timely request by an inmate for the presentation of such evidence, there is no general affirmative

Case 1:14-cv-01268-SHR   Document 9   Filed 05/03/16   Page 11 of 16


obligation on the part of prison officials to ferret out this proof." *Spotts v. Holt*, No. 3:11-CV-1880, 2015 WL 4219751, at \*7 (M.D. Pa. July 10, 2015) (report and recommendation of magistrate judge and order adopting such report and recommendation).  Here, Parks had an opportunity to present evidence at the DHO hearing as required by the Due Process Clause.  Accordingly, Parks's claim that he was denied due process in connection with Lieutenant Ferguson's investigation is without merit.

Parks's claim that the DHO was biased is also without merit.  In the context of a prison disciplinary proceeding, the requirement of an impartial tribunal "prohibits only those officials who have a direct personal or otherwise substantial involvement . . . in the circumstances underlying the charge from sitting on the disciplinary body." *Meyers,* 492 F.2d at 306.  A "generalized critique" of staff impartiality is insufficient to demonstrate the degree of bias necessary to prove a due process violation. *Lasko v. Holt,* 334 F. App'x 474, 476 (3d Cir. 2009).  Here, although Parks claims that the DHO was biased, he has not presented any basis for that claim, and he does not contend that the DHO was personally or substantially involved in the underlying events.  Accordingly, his bias claim is without merit.

Parks contends that the BOP's Program Statement does not define "engaging in sexual acts."   That contention is construed as a claim that the section of the disciplinary policy he was found to have violated is void because is it vague.  "A

regulation is void for vagueness if it (1) 'fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits,' or (2) 'authorizes or even encourages arbitrary and discriminatory enforcement.'" *Ryan v. Scism,* 474 F. App'x 49, 52 (3d Cir. 2012) (quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2000)). Although "[d]ue process undoubtedly requires certain minimal standards of specificity in prison regulations," given the fundamental difference between prison society and the free society, the degree of specificity required of prison regulations is not as strict as that required of ordinary criminal sanctions. *Meyers,* 492 F.2d at 310. "'Prisoners, unlike free men, must well know that they are considered potentially dangerous men and must expect to be highly regimented. In such cases the law requires less in the way of notice, and places a greater burden on the individual to make inquiry or ask permission before acting.'" *Id.* at 311 (quoting *Landman v. Royster,* 333 F.Supp. 621, 655-656 (E.D.Va. 1971)).

28 C.F.R. § 541.3, Table 1 categorizes a Code 205 violation as a high severity violation and defines such a violation as "engaging in sexual acts." Code 205 is not unconstitutionally vague. From the regulation, a prisoner should know that masturbating in front of a staff member is a sexual act. *See Neal v. U.S. Penitentiary Atwater,* 585 F. App'x 730 (9th Cir. 2014) (concluding that masturbation is a sexual act under Section 205 of the BOP's Disciplinary Code and

that Neal had fair notice that his conduct was prohibited); *Levi v. Holt*, 192 F.

App'x 158, 162 (3d Cir. 2006) (concluding that the BOP's determination that a

prisoner who engaged in the touching of his own penis through his clothes in the

prison library constituted "engaging in sexual acts" was "not clearly erroneous"

and the prisoner's conduct fell within Code 205); *Gray v. Fox*, No. CV 15-3563-

DDP (AS), 2015 WL 10044275, at *3 (C.D. Cal. Oct. 8, 2015) (Report and

Recommendation) ("Code 205 is not unconstitutionally vague, since it gives fair

notice that masturbation is a prohibited act."), report and recommendation adopted,

*Gray v. Fox*, No. CV 15-3563-DDP (AS), 2016 WL 552653, at *1 (C.D. Cal. Feb.

9, 2016).  Accordingly, the claim that the regulation is unconstitutionally vague is

without merit.

    Parks's challenge to the sufficiency of the evidence and the standard applied

by the DHO is also without merit.  In the prison disciplinary context, a substantive

attack on the sufficiency of the evidence must meet a demanding legal standard to

succeed.  In *Hill*, 472 U.S.at 454, the Supreme Court held that the revocation of

good time credits does not comport with the minimum requirements of due process

unless the findings of the disciplinary hearing officer are supported by some

evidence in the record.  "The Federal Constitution does not require evidence that

logically precludes any conclusion but the one reached by the disciplinary board."

*Id.* at 457.  Rather, in the prison disciplinary context, due process "requires only

that there be some evidence to support the findings made in the disciplinary hearing." *Id.* Ascertaining whether the "some evidence" standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* 455. "Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56. "[T]he "some evidence" standard is a standard of appellate review to be applied by the district court rather than a burden of proof in a prison disciplinary proceeding." *Denny v. Schultz,* 708 F.3d 140, 144 (3d Cir. 2013). Under the "some evidence" standard of review, "a reviewing court need only find that the DHO's decision had 'some basis in fact' in order to affirm the decision as comporting with the Due Process Clause." *Id.* at 145 (quoting *Hill*, 472 U.S. at 456).

Having reviewed the DHO report, it is clear that the DHO applied the greater-weight-of-the-evidence standard set forth in 28 C.F.R. § 541.8(f) and that there is some evidence to support the DHO's conclusion that Parks had engaged in a sexual act. Accordingly, Parks's claim is without merit.

Parks contends that the BOP violated its own policies and procedures and thereby violated the Administrative Procedures Act (APA). It is assumed for the sake of argument that Parks can bring an APA claim. *But see Jordan v. Wiley*, 411 F. App'x 201, 214 (10th Cir. 2011) (determining that 18 U.S.C. § 3625 bars APA

review of the BOP's substantive disciplinary determinations involving the reduction of good-time credits).  For the reasons discussed above, however, the DHO's decision was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," 5 U.S.C. § 706(2)(a), such that Parks could succeed on an APA claim.

## IV. Recommendation.

For the foregoing reasons, it is recommended that Parks's petition for a writ of habeas corpus be denied.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive

further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 3rd day of May, 2016.


_**S/Susan E. Schwab**_
Susan E. Schwab
United States Magistrate Judge